IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

STANLEY FLOREK,

                    Plaintiff,

                                                Civil Action No.
     v.                                1:08-CV-00919 (NAM/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

MARGOLIUS LAW OFFICE      PETER M. MARGOLIUS, ESQ.
7 Howard Street
Catskill, New York 12414

FOR DEFENDANT:

HON. ANDREW T. BAXTER      JOHN M. KELLY, ESQ
United States Attorney           Special Assistant U.S. Attorney
Northern District of New York
Post Office Box 7198
100 South Clinton Street
Syracuse, New York, 13261-7198

SOCIAL SECURITY ADMINISTRATION  MARY ANN SLOAN, ESQ.
Office of the General Counsel     Acting Chief Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Stanley Florek, who claims to be mentally impaired and partially deaf, has commenced this proceeding pursuant to 42 U.S.C. § 405(g) seeking judicial review of a determination by the Commissioner of Social Security ("Commissioner") finding that he was not disabled at the relevant times, and therefore not entitled to either disability insurance benefits ("DIB") or supplemental security income ("SSI") payments under the Social Security Act (the "Act").   In support of his challenge to the Commissioner's decision, plaintiff contends that the decision of the administrative law judge ("ALJ") assigned to hear and determine the matter, forming the basis for the Commissioner's decision, is not supported by substantial evidence because it is at odds with materials submitted to the agency following the ALJ's decision and results from a residual functional capacity ("RFC") determination that is fatally flawed and improperly assumes plaintiff's ability to lift up to fifty pounds, a capacity plaintiff contends he does not possess.

Having carefully reviewed the record now before the court, considered in light of the parties' respective contentions, I find that the Commissioner's determination resulted from the application of proper

legal principles and is supported by substantial evidence, and should therefore be upheld.

I.      BACKGROUND

A.      General Background

Plaintiff was born in 1973, and was thirty-three years old at the time of the administrative hearing before the agency on November 27, 2006. Administrative Transcript at pp. 81, 196.[1]  Plaintiff attended high school, but did not complete the tenth grade.  AT 197-98, 211.  While in school, plaintiff was enrolled in special education classes.  *Id.*  Although he did not graduate from high school, Florek did ultimately obtain a general educational development ("GED") diploma while incarcerated.  AT 197-98. At the time of the hearing plaintiff was separated from his wife, and the two were pursuing a divorce.  AT 196.  The plaintiff has two children, both of whom live with their mother.  AT 196-97.  Plaintiff lives alone in a small, studio-type apartment.  AT 197.

Plaintiff's work experience throughout his adult life has been sporadic.  Plaintiff worked briefly at either age fifteen or sixteen for Burger

---

[1]      Portions of the administrative transcript (Dkt. No. 7), which was compiled by the Commissioner and is comprised in large part of the medical records and other evidence which was before the agency when its decision was made, will be cited hereinafter as "AT ___."

King and Haines Tires, the latter of which is located in Catskill, New York, but is unable to remember the precise dates, and on his disability report he gave only approximations.  *See* AT 199-200, 214.

Plaintiff was a New York State prison inmate from 1999 until released on parole in December of 2004.[2]  AT 136, 194.  While in custody of the New York State Department of Correctional Services ("DOCS") Florek received training for building maintenance, welding and small engine repair, but was removed from all three classes due to arguments with both teachers and fellow classmates.  AT 212-14.  Since his release from prison, plaintiff has "put in a few applications [for work] but never got [any] back."  AT 198.  At the hearing plaintiff testified that he was not familiar with the Vocational and Educational Services for Individuals With Disabilities ("VESID") program.[3]  *Id.*

Plaintiff provided some information to the agency regarding his

---

[2]     Plaintiff subsequently violated the terms of his parole and was again incarcerated, this time for a period of fifteen months ending in June of 2006.  *See* AT 194, 206-07.

[3]     VESID, an office of the New York State Education Department, offers disabled New Yorkers access to a full range of services that they may require throughout their lives.  Through its administration of both the special education and vocational rehabilitation programs, VESID coordinates policy and services relating, *inter alia*, to vocational rehabilitation services for individuals with disabilities, ages 16 and older, and independent living services for adults with disabilities.  *See* Appendix A (http://www.vesid.nysed.gov/about_vesid/about.htm (site last visited Oct. 5, 2009)).

4

exertional limitations.  He reported, for example, that his job at Haines

Tires required that he lift and stack tires.  AT 86-87, 115.  Flores reported

that while at Haines sixty-five pounds was the heaviest weight he lifted at

work, and that he frequently lifted fifty pounds or more during the workday.

AT 86-87.  Plaintiff further reported that he walked for five hours, stood for

seven hours, sat for one hour, climbed for three hours, stooped for four

hours, and handled large objects for one hour during a typical workday.

AT 87.  Plaintiff asserts that his back condition now prevents him from

lifting anything over fifty pounds.  AT 110.  Plaintiff reports that he can

walk "about [ten] to [fifteen] feet" before having to stop and rest for fifteen

to twenty minutes to recover.  AT 111.

Plaintiff testified that he has not attempted to learn any job skills

because he becomes frustrated, aggravated, and mad in other people's

presence and that coworkers chastise him for being slow – a situation

which has led to physical confrontations.  AT 200-01, 215-16.  Plaintiff

relatedly testified that he has a "very short temper" and dislikes people

putting him down; he explained that while at earlier times he would resort

to physical confrontation in response to insults, he now just walks away.

AT 217.  Florek similarly reports disliking unsolicited advice and to

becoming very upset when people have to explain things to him more than once, or when they make fun of the way he talks.  AT 111-12.  Plaintiff further testified that he cannot handle time constraints in a work setting.  AT 214.

According to the plaintiff, and as substantiated by his medical records, Florek suffers from both physical and mental deficiencies.  Plaintiff has had very limited contact, however, with healthcare professionals.  At the time of the hearing Florek testified that he had an upcoming appointment with his primary physician, but acknowledged that he has not otherwise seen any doctors for his physical conditions since his release from prison in December of 2004.  AT 203-04.  Plaintiff noted that he simply deals with pain and hates seeing doctors and needles.  AT 204-05.  Moreover, plaintiff testified that he is not currently taking any medications, although he did take "trazonon (PHONETIC),"[4] while he was incarcerated to help him sleep.   AT 207.

Describing what he regards as a learning disability, during the hearing plaintiff testified that he can neither read nor understand "big

---

[4]        The court was unable to identify "trazonon."  Trazodone hydrochloride, to which plaintiff could be referring, is an antidepressant used to treat major depressive episodes with or without prominent anxiety.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1983 (31st ed. 2007).

words" and that his reading comprehension is poor.  AT 211-12.  Plaintiff

similarly reported that he has difficultly speaking due to an inability to

properly pronounce words.  AT 110.   Plaintiff added that he requires

either help or a calculator to perform anything beyond simple calculations,

such as adding and subtracting on his fingers.  AT 110, 211-12.  Plaintiff

also stated that his learning disability prevents him from comprehending

various workplace operations.  AT 202-03.  Plaintiff further noted that he

has difficulty staying on task and that when he receives job instructions,

he immediately forgets them.  AT 86, 112, 218.

Plaintiff's mental impairment is reflected in records of the

Middleburgh Central School District's Committee on Special Education

("CSE"), which classified him as emotionally disturbed while he attended

school and recommended his placement in a special education program

at the Middleburgh Central High School Learning Center, together with

weekly counseling.  AT 177-79.  Plaintiff's school records reveal that he

achieved an intelligence quotient ("IQ") score of 79 on a Wechsler Adult

Intelligence Scale ("WAIS") test administered in September of 1990, and

describe his intellectual functioning as low average/borderline, noting

further that plaintiff's social development was poor with regard to himself,

his peers, adults, his family, and his environment.  AT 177-78.

Plaintiff began treating for complaints of depression and stress with the Greene County Mental Health Center ("MHC") in August of 2006.  *See* AT 186-90.   Notes of the initial screening of plaintiff by the MHC reflect that plaintiff's reported symptoms include poor sleep, racing thoughts, and a sense of being overwhelmed.  *Id.*  The examiner noted, however, that plaintiff displayed fair insight and judgment into problems and stated a diagnosis of a generalized anxiety disorder and anti-social personality disorder.[5]  AT 187.  In a letter dated November 20, 2006, and apparently

---

[5]      The MHC screening notes contained in the record are only intermittently legible.  The court has endeavored to accurately transliterate these notes, which seem to state the following:

Stanley is a self-referred 33 year old [divorced Caucasian male] who presents with complaints of depression and stress.  Released from [New York State] prison system approximately 2 months ago on an [eight] year incarceration for rape 2nd and 3rd.  Reports engaging in sexually . . . with a [sixteen] year old [and] arrested several days later.  Did not know her age [at] the time. . . and he was [twenty five years old] when this incident occurred.  Since his release, he has been struggling with people reporting him to the police and making false accusations about him to his parole officer . . . . paranoid that people want him back in prison.  Complains of [decreased] sleep and racing thoughts [and increasing] frustration level and feeling overwhelmed.  Seeks . . . services . . . . Will discuss case [with] forensic coordinator . . . . [Diagnosis]–300.02 Generalized Anxiety [Disorder] and 301.7 Antisocial Personality [Disorder] . . . Mood [Disorder].

. . . remembers a thin, tattooed . . .[thirty-three year old with] rapid eye movements . . . [and] who appears his stated age.  Alert and oriented x 3. [Recent and remote] memory intact.  Denies thoughts of suicide . . . .

solicited by plaintiff's counsel, Michael Downey, an employee at the

Mental Health Association of Columbia-Greene Counties, Inc. gave the

following opinion regarding the plaintiff's condition:

> [b]ased on our interaction with Mr. Florek Jr. and
> our ongoing communications with his other
> providers, it is our professional opinion that Mr.
> Florek Jr. cannot hold a full or part time job in
> competitive employment without a full time job
> coach on site.  In addition due to Mr. Florek Mr.'s
> [sic] physical and learning limitations, he would
> also need extensive accommodations in the
> workplace.

AT 129.

Plaintiff was consultatively examined on January 26, 2005 by Dr.

Annette Payne, Ph.D.  AT 130-39.  In connection with that examination Dr.

――――――――――――――――

AT 187.

In describing plaintiff's "core history" the screening notes indicated that plaintiff had a history of assaultive behavior.  AT 189.  The screening notes also reflect that plaintiff claimed that his family members verbally and emotionally abused him his entire life.  The screening notes further report that plaintiff had a history of speech therapy and enjoyed handball and drawing in his leisure time.  AT 190.  Although courts have remanded Social Security appeals cases for an ALJ's failure to clarify the content of illegible treatment notes, *see*, *e.g.*, *Jackson v. Barnhart*, 2008 WL 1848624, at *8 (W.D.N.Y Apr. 23, 2008) (adopting recommendation that case be remanded to reconsider findings after clarifying content of illegible treatment records), plaintiff does not seek reversal or remand on this basis and merely notes that the "record reveals that the claimant only attended an intake session with mental health (Record 186-190)."  Dkt. No. 9, Pl.'s Br. at 3.  The court finds that the illegible portions of the screening notes do not interfere with comprehension of their content so as to hinder fair review, *cf. Ward v. Heckler*, 786 F.2d 844, 848 (8th Cir. 1986).  Moreover, the notes appear to be cumulative and shed no further light on plaintiff's condition.

Payne administered a WAIS-III test, yielding a verbal score of 73, a performance score of 73, and a full scale score of 70, with Dr. Payne concluding that those scores were consistent with borderline intellectual functioning.  AT 132.  Based upon her examination Dr. Payne diagnosed the plaintiff as suffering from a depressive disorder and a personality disorder not otherwise specified ("NOS"), as well as the borderline intellectual functioning previously noted.  AT 133.  In two separate reports of her examination, one assessing plaintiff's intelligence and the other separately addressing his psychiatric condition, Dr. Payne also stated her opinion that plaintiff

> could follow and understand simple directions and instructions. He could perform simple rote tasks under supervision.  He could consistently perform simple tasks.  He would have problems with attention and concentration.  He would have difficulties learning new tasks.  He would have difficulties performing complex tasks and making appropriate decisions. He would have difficulties relating with others and dealing with stress.  His psychiatric difficulties are moderately limiting.

AT 133, 138.

Although it was not presented to the ALJ before the date of his decision, the record also includes a second evaluation completed by Dr. Payne on April 22, 2008, more than two years after the first, again assessing plaintiff's psychological and intellectual capacities with an eye

toward determining his employability.  AT 17-22.  In the report of that

second examination Dr. Payne diagnosed the plaintiff as suffering from

depressive disorder NOS, anxiety disorder NOS, personality disorder

NOS, and borderline intellectual functioning, noting further that plaintiff

had financial and vocational difficulties as well as increasing psychiatric

symptoms.  AT 20.  In that report Dr. Payne also found that plaintiff is

unable to follow, understand, or remember simple instructions and

directions fifty percent of the time; is unable to independently perform

simple and complex tasks fifty percent of the time; is unable to maintain

attention and concentration for rote tasks seventy-five percent or more of

the time; is unable to regularly attend to a routine and maintain a schedule

seventy-five percent or more of the time; and is unable to maintain basic

standards of hygiene and grooming, use public transportation, or perform

low stress and simple tasks fifty percent of the time.  AT 20-21.

     In her supplemental report Dr. Payne opined that plaintiff was

unable to participate in any activities except treatment or rehabilitation for

three to six months and to that end recommended counseling,

psychotopic medication, and vocational rehabilitation, adding that plaintiff

was at high risk for vocational failure in light of his ongoing psychiatric

symptoms and personality.  AT 21.  Dr. Payne did not, however, indicate

that plaintiff appeared to be permanently disabled or recommend SSI

referral.  AT 22.

In addition to his mental limitations plaintiff claims to experience

physical limitations as a result of various conditions.  In both his disability

report, AT 85, and during the hearing, AT 202, plaintiff claimed to suffer

from a hearing impairment.  During the hearing plaintiff testified that while

incarcerated he was fitted for hearing devices, but did not receive them

prior to his release.  AT 203.  An examination of plaintiff's ears conducted

by Dr. Arthur S. Cohn, M.D. on referral from the Bureau of Disability

Determination, however, failed to substantiate that claim, revealing normal

hearing with one hundred percent discrimination bilaterally and normal

tympanograms.  AT 140.  Based upon his examination Dr. Cohn recorded

his impression that plaintiff's tinnitus was of undetermined etiology and

concluded that plaintiff had normal hearing.  *Id.*

Plaintiff also claims that while incarcerated he was informed by a

prison doctor or nurse that both of his rotator cuffs were torn, adding that

he experiences constant and sharp pains in his shoulders, attributed to

having had to climb up and down from upper bunk beds while

incarcerated.  AT 203-04.  The record, however, contains no evidence of

plaintiff having sought or received medical treatment for that condition.

In addition to the psychiatric and psychological consultative

examination by Dr. Payne, plaintiff also underwent a consultative physical

assessment for determination of employability on April 22, 2008 by Dr.

Kalyani Ganesh, M.D., also after the date of the ALJ's decision.  AT 12-

16.  Based upon that examination, Dr. Ganesh estimated that plaintiff can

lift or carry twenty pounds occasionally and ten pounds frequently; retains

the ability to walk, stand, and sit for more than four hours in an eight hour

work day; and can participate in full time work activities, education and

training for up to forty hours each week with "regular treatment and

ongoing follow-up."  AT 14-16.

During the hearing plaintiff described his typical daily activities.

Plaintiff has a driver's license, and he drove himself to the hearing.  AT

197.  He testified that he goes fishing for a half-an-hour at a time, works

around a garden, and cleans leaves.  AT 208.  Florek also watches "a lot

of [television]" and listens to "a lot of music."  *Id.*  Plaintiff's interests also

include bike riding and collecting hats.  AT 109.  Plaintiff testified that he

cleans and vacuums his residence, but does not do laundry because he

13

does not understand how to operate a washing machine and requires assistance with ironing as well.  AT 108-09, 208.  He admits to food shopping.  AT 109.  Plaintiff testified that he spends time with family members both at their houses and in his residence, but reports fighting with his mother.  AT 110, 208-09.  Plaintiff stated that he does not know how to cook and generally prepares microwave meals and cereal for himself, but otherwise relies upon his mother, girlfriend, and landlord to cook for him.  AT 107, 132-33, 137, 200.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before the Agency

Plaintiff filed applications for DIB and SSI benefits on December 14, 2004, alleging a disability onset date of March 1, 1993.   AT 65.  Those applications were denied on March 7, 2005.  AT 35-39.

On November 27, 2006, a hearing was conducted by ALJ Terrance Farrell to address plaintiff's application for benefits.  AT 191-27. Appearing at the hearing were the claimant, accompanied by a paralegal working with plaintiff's attorney, and Peter Manzi, Ph. D., a vocational expert retained by the agency to provide opinions regarding plaintiff's employability.

On May 25, 2007, ALJ Farrell issued a decision in which, based upon his *de novo* review of the record, he found that plaintiff was not disabled within the meaning of the Act at the relevant times and thus ineligible for benefits.  AT 29-34.  Applying the now familiar five step test for determining disability, ALJ Farrell first found that plaintiff last met the disability insured requirements under the Act on September 30, 1994, and has not engaged in substantial gainful activity since the alleged onset date of his disability.  AT 33.  Turning to the next two steps in the disability calculus, the ALJ found that while plaintiff suffers from mental impairments of sufficient severity to significantly restrict his ability to perform basic work activities, those impairments do not meet or equal in severity any of the listed, presumptively disabling disorders set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AT 31.

Before proceeding to step four of the disability test, ALJ Farrell surveyed the available evidence to determine plaintiff's RFC, concluding that plaintiff retains the ability to perform a full range of unskilled work activity at any exertional level in a relatively low stress environment requiring no production quotas and only occasional contact with supervisors, coworkers, and the general public.  AT 31.  Noting that

plaintiff has no significant past relevant work experience, AT 32, the ALJ proceeded to step five where he determined, based upon the testimony of the vocational expert, that despite his limitations plaintiff maintains the capability to work as a furniture cleaner, industrial cleaner, laundry sorter, housekeeper, addresser, and laundry worker and that there are jobs in sufficient numbers, both nationwide and regionally, available to the plaintiff in those positions.[6]  AT 32.   Based upon these findings ALJ Farrell thus concluded that plaintiff was not disabled, and therefore not entitled to receive Social Security benefits.  AT 33.

Plaintiff appealed the ALJ's determination to the Social Security Administration Appeals Council, submitting additional materials including the assessments of Dr. Ganesh and Dr. Payne in support of that appeal. AT 7-22, 25.  Observing that those examinations were conducted nearly eleven months after the date of the ALJ's decision and did not speak to whether plaintiff was disabled on or before May 27, 2007, the Appeals Council rejected the appeal and affirmed the ALJ's decision, which by that decision became a final determination of the agency.  AT 2-5.

_____

[6]     The ALJ noted that application of the medical vocational guidelines set forth in the regulations (the "grid"), 20 U.S.C. § Pt. 404, Subpt. P, App. 2, and in particular Rule 203.28 thereof, confirms that based upon plaintiff's RFC a finding of no disability is warranted.  AT 32.

B.    This Action

Having exhausted his internal administrative remedies, plaintiff commenced this action on August 26, 2008.  Dkt. No. 1.  Issue was thereafter joined on December 22, 2008 by the Commissioner's filing of an answer, Dkt. No. 8, preceded by submission of an administrative transcript of the evidence and proceedings before the agency.  Dkt. No. 7.  With the filing of plaintiff's brief on February 5, 2009, Dkt. No. 9, and that on behalf of the Commissioner on March 23, 2009, Dkt. No. 10, the matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).  *See also* FED. R. CIV. P. 72(b).[7]

III.   DISCUSSION

---

[7]      This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order, which applies to appeals from a final decision denying SSI benefits, once issue has been joined, the parties file legal memoranda and a determination is made based upon the pleadings as if cross-motions were filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F.Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986).  If, however, the Commissioner has applied the correct legal standards and substantial evidence supports the ALJ's findings, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F.Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42

18

U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co.*, 308 U.S. at 229, 59 S. Ct. 219); *Martone*, 70 F.Supp. 2d at 148 (quoting *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that an ALJ has applied incorrect legal standards, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42

U.S.C. § 405(g); *see Martone*, 70 F.Supp. 2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F.Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Sec'y of Dep't of Health and Human Servs.,* 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record, and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir.1992); *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

 B. <u>Disability Determination-The Five Step Evaluation Process</u>

 The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months . . . ."  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of
> such severity that he is not only unable to do his previous work
> but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of
> whether such work exists in the immediate area in which he
> lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.  For the
> purposes of the preceding sentence (with respect to any
> individual), "work which exists in the national economy" means
> work which exists in significant numbers in the region where
> such individual lives or in several regions of the country.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then

the second step involves an examination of whether the claimant has a

severe impairment or combination of impairments which significantly

restricts his physical or mental ability to perform basic work activities.  *Id.*

21

§§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone*, 70 F.Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F.Supp. 2d at 150.

      C.      <u>The Evidence In This Case</u>

              1.      <u>Clarification of Dr. Payne's Opinion and Mental RFC</u>

The first argument in support of plaintiff's challenge to the

Commissioner's determination centers upon Dr. Payne's first set of

opinions, rendered on January 26, 2005.  Although somewhat difficult to

discern, plaintiff's claim in this regard appears to be that clarification

should have been sought by the ALJ based upon the inconsistency

between Dr. Payne's finding of his inability to understand and execute

simple job instructions and consistently perform simple tasks, a finding to

which the ALJ attached "significant weight," and other portions of Dr.

Payne's report including her note that the claimant can perform only

simple rote tasks under supervision.  I have assumed, based upon the

arguments advanced in plaintiff's brief, that as a basis for reversal he is

generally asserting that the ALJ failed to fulfill his duty to develop the

record and to accept all of the limitations reflected in Dr. Payne's opinions.


By statute, an ALJ is charged with the responsibility of developing a

claimant's complete medical history for at least twelve months prior to the

filing of an application for benefits and "also to gather such information for

a longer period if there [is] reason to believe that the information [is]

necessary to reach a decision."  *DeChirico v. Callahan*, 134 F.3d 1177,

1184 (2d Cir. 1998) (*citing* 42 U.S.C. § 423(d)(5)(B) as incorporated by 42

U.S.C. § 1382c(a)(3)(G) and 20 C.F.R. § 416.912(d)).  Included within this

obligation is the requirement that when additional materials are requested

in order to make an informed decision regarding disability, those materials

should be secured.  *See Melville v. Apfel*, 198 F.3d 45, 51-52 (2d Cir.

1999).

      Pertinently, the governing regulations provide that

> [w]hen the evidence we receive from your treating physician or
> psychologist or other medical source is inadequate for us to
> determine whether you are disabled, we will need additional
> information to reach a determination or a decision.  To obtain
> the information, we will take the following actions.

> (1) We will first recontact your treating physician or
> psychologist or other medical source to determine whether the
> additional information we need is readily available.  We will
> seek additional evidence or clarification from your medical
> source when the report from your medical source contains a
> conflict or ambiguity that must be resolved, the report does not
> contain all the necessary information, or does not appear to be
> based on medically acceptable clinical and laboratory
> diagnostic techniques.

20 C.F.R. §§ 404.1512(e), 416.912(e) (emphasis added).   While the obligation to fully develop a record is particularly critical in the case of a claimant who is not represented by counsel, *see Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir. 1984), it also applies in a case where a claimant is represented an attorney.   *Perez*, 77 F.3d at 47.

Despite plaintiff's argument to the contrary, Dr. Payne's determinations are not unclear, nor do they suggest an internal discrepancy demanding resolution.  The only distinction to be drawn from the comparison highlighted by plaintiff is that one of the statements contains a supervisory element.  *Compare* plaintiff "could follow and understand simple directions and instructions . . . [and] could consistently perform simple tasks" *with* plaintiff "could perform simple rote tasks under supervision."  AT 133, 138.  This fine distinction hardly suffices to trigger an obligation on the part of the ALJ to seek clarification of Dr. Payne's opinion.

With respect to Dr. Payne's assessment of plaintiff's prognosis as "fair to poor," it stands independently of the statements cited above, which were made within her medical source statement.  Moreover, the combination of a finding that a claimant can follow and understand simple

directions and instructions and/or perform simple tasks with a contemporaneous "fair to poor prognosis" is not uncommon, nor does it present the type of ambiguity that necessarily requires clarification. *See, e.g.*, *Yackel v. Astrue*, 06-CV-626, 2009 WL 1288548, at *11 (N.D.N.Y. May 7, 2009) (Hurd, J.) (noting that independent medical examiner found claimant was able to follow and understand simple directions and instructions while also opining that he had a poor prognosis); *Oakes v. Astrue*, 06-CV-0332, 2009 WL 1109759, at *6 (N.D.N.Y. Apr. 23, 2009) (Kahn, J.) (noting that consultative examiner found claimant capable of following, understanding and remembering simple instructions and performing simple tasks while also opining that he had a fair prognosis); *Hluska v. Astrue*, 06-CV-0485, 2009 WL 799967, at *11 (N.D.N.Y. Mar. 25, 2009) (Kahn, J.) (noting that independent medical examiner found claimant was able to follow and understand simple directions and instructions while also opining that her prognosis was fair); *Cartagena v. Commissioner of Social Security*, 04-CV-1081, 2008 WL 833523, at *5 (N.D.N.Y. Mar. 27, 2008) (Mordue. C.J.) (noting that social worker found that claimant was capable of understanding, remembering and carrying out very short and simple instructions while also opining that her

prognosis was poor).

I note further that the fact that the ALJ did not accept every limitation indicated by Dr. Payne is not a ground for reversal or remand. The court is not, for example, in the unfortunate position of attempting to divine the medical basis for the ALJ's assessment, *see Falcon v. Apfel*, 88 F.Supp. 2d 87, 91 (W.D.N.Y. 2000), but in this instance is able to readily glean the rationale for the ALJ's decision. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). The ALJ predicated his determination of plaintiff's RFC "upon the record in its entirety." AT 31.

As was noted above, plaintiff also disputes one of the purported bases for the mental component of the ALJ's RFC determination. Plaintiff questions the accuracy of the ALJ's statement that his condition could be expected to improve with treatment. Regardless of the statement's accuracy, however, substantial evidence supports the ALJ's findings with respect to the mental component of plaintiff's then-current RFC.

A claimaint's RFC represents

what an individual can still do despite his or her limitations . . .
. Ordinarily, RFC is the individual's maximum remaining ability
to do sustained work activities in an ordinary work setting on a
regular and continuing basis, and the RFC assessment must
include a discussion of the individual's abilities on that basis.
A "regular and continuing basis" means 8 hours a day, for 5
days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996

WL 374184, at *2 (SSA July 2, 1996)).  In making an RFC determination,

an ALJ must consider a claimant's physical abilities, mental abilities, and

symptomology, including pain and other limitations which could interfere

with work activities on a regular and continuing basis.  20 C.F.R. §

404.1545(a).

In this instance, the ALJ found that plaintiff retained the RFC

to perform a full range of unskilled work activity at any
exertional level in a relatively low stress environment requiring
no production quotas and only occasional contact with
supervisors, co-workers and the general public.  The [ALJ]
finds that the claimant has moderate difficulty in carrying out
daily activities, moderate difficulty engaging in social
interaction and moderate deficits in concentration.

AT 31, 33.   The ALJ considered the opinions of Dr. Payne, to which he

accorded substantial weight, and incorporated mental limitations into his

RFC finding.  Significantly, both the ALJ and Dr. Payne concluded that

plaintiff's psychiatric limitations were moderate in degree.  *See* AT 31, 133, 138.

The ALJ's findings regarding plaintiff's mental limitations draw further support from a report dated March 9, 2005 and prepared by Dr. James Ipert, a state agency medical consultant who reviewed plaintiff's records and completed a mental RFC assessment as well as a psychiatric review technique addressing his limitations.  AT 143-74.  Addressing his mental capacity, Dr. Ipert found that plaintiff was only moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, accept instructions and respond appropriately to criticisms from supervisors, and set realistic goals or make plans independently of others, but otherwise found no significant limitations.  AT 143-45.  Dr. Ipert also noted that plaintiff's low IQ scores were inconsistent with both his use of grammar, syntax, and spelling that plaintiff exhibited in completing his "3876" function and work history reports, *see* AT 105-21, as well as his achievement of a GED, opining that plaintiff is

> left with the mental RFC associated with the ability to carry out
> work procedures with a consistent pace.  He can relate
> adequately with coworkers and supervisors.  He can use
> judgment and adapt to changes.  He was noted to be

> somewhat angry . . . on the phone with SSA field office staff
> and [with] others in a "fair" manner with psychologist.  It
> appears he would have moderate level limits dealing with
> supervisors.  His allegations that he places his money and
> then can't find it strains credibility and is not consistent with
> any of the data on file, particularly any data related to
> psychiatric problems.

AT 145-46.

In his psychiatric review technique form Dr. Ipert also stated his

opinion that plaintiff suffers from a depressive disorder NOS, borderline

intellect, a personality disorder NOS, and alcohol abuse in remission.  AT

147, 150-51, 154-55.  Dr. Ipert concluded that plaintiff is mildly limited in

his activities of daily living and moderately limited in his maintenance of

social functioning and concentration, persistence or pace, but reported

that plaintiff did not appear to have suffered any episodes of

decompensation.  AT 157.  These findings were properly considered,

particularly since the Commissioner's regulations treat state agency

medical consultants such as Dr. Ipert to be "highly qualified physicians

and psychologists who are also experts in Social Security disability

evaluation."  20 C.F.R. § 404.1527(f)(2)(i) and 416.927(f)(2)(i).

Having carefully reviewed the record in light of plaintiff's arguments,

I find that the ALJ did not shirk his duty to fully develop the record and that

the mental component of his RFC finding is supported by substantial
evidence.

    2.    <u>Error by the Appeals Council</u>

      Plaintiff next maintains that the Appeals Council erred in failing to
remand the case to the ALJ based upon the new and material evidence
submitted, including Dr. Payne's psychological and intellectual
assessments for determination of employability, both dated April 22, 2008.
The governing regulations expressly require the Appeals Council to
consider "new and material" evidence if it "relates to the period on or
before the date of the [ALJ's] hearing decision."  20 C.F.R. § 404.970(b);
*see also* § 416.1470(b).  The Appeals Council "will then review the case if
it finds that the [ALJ]'s action, findings, or conclusion is contrary to the
weight of the evidence currently of record."  20 C.F.R. § 404.970(b); *see* §
416.1470(b). "'Weight of the evidence' is defined as the balance or
preponderance of evidence; the inclination of the greater amount of
credible evidence to support one side of the issue rather than the other."
Appendix B (*HALLEX: Hearings, Appeals and Litigation Manual* I-3-3-4
(S.S.A. 2009) at http://www.ssa.gov/OP_Home/hallex/I-03/I-3-3-4.html
(last visited Oct. 5, 2009).

Significantly, "[t]he only limitations stated in these rules are that the evidence must be new and material and that it *must relate to the period on or before the ALJ's decision*."  *Perez*, 77 F.3d at 45 (emphasis added); *see also Bellare ex rel. S.M. v. Astrue*, 07-CV-6205, 2008 WL 2746308, at *2 (W.D.N.Y. Jul. 11, 2008) ("The record includes evidence that was submitted to the Appeals Council, but was not before the ALJ, provided that the evidence relates to the claimant's condition as it existed on or before the date of the ALJ's decision.").  Specifically, evidence is "new" if it is not merely cumulative of what is already in the record, and it is "material" if it is both 1) relevant to the claimant's condition during the time period for which benefits have been denied – that is, the period on or before the ALJ's decision, and 2) probative meaning that there is a "reasonable probability that the new evidence would have influenced the Commissioner to decide the claimant's application differently." *Webb v. Apfel*, 98-CV-791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb. 8, 2000) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1990)).  "A diagnosis that post-dates an administrative hearing may be considered new evidence relating to the relevant time period only if it reveals that a claimant 'had an impairment substantially more severe than was

previously diagnosed.'"  *Xu v. Barnhart*, CV-04-3927, 2006 WL 559263, at

*7 (E.D.N.Y. Mar. 7, 2006) (quoting *Lisa*, 940 F.2d at 44). In *Lisa*, the

Second Circuit explained that when "a diagnosis emerges after the close

of administrative proceedings that sheds considerable new light on the

seriousness of [a claimant's] condition, evidence of that diagnosis is

material and justifies remand."  940 F.2d at 44 (internal quotations and

citation omitted).

Even if "the Appeals Council denies review after considering new

evidence, the [Commissioner]'s final decision necessarily includes the

Appeals Council's conclusion that the ALJ's findings remained correct

despite the new evidence."  *Perez*, 77 F.3d at 45.  Accordingly, the

additional evidence becomes part of the administrative record reviewed by

the district court and the role of the court is then to review the record,

including the new evidence, to "determine, as in every case, whether there

is substantial evidence to support the decision of the Secretary."  *Perez*,

77 F.3d at 45-46.

Dr. Payne's assessment submitted by plaintiff to the Appeals

Council does not satisfy the criteria required to show materiality.  As was

noted above, and as the Appeals Council explained, Dr. Payne's

assessment post-dates the ALJ's decision by nearly eleven months and does not relate to the period on or before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b). Moreover, the assessment does not reveal that plaintiff's impairment was substantially more severe than previously diagnosed. *See Xu*, 2006 WL 559263, at *7. Significantly, Dr. Payne's most recent assessment of plaintiff occurred only four days after his girlfriend "cleared out their apartment . . . . [and] left," an event which appears to have coincided with his increased depression. AT 17. It therefore stands to reason that if plaintiff was increasingly depressed in the wake of his girlfriend having left him, he was less depressed prior to that time, thereby undermining the reliability of the limitations indicated by Dr. Payne as they relate back to the time of the ALJ's decision some eleven months prior.

In any event, it seems unlikely that Dr. Payne's post-hearing assessment, if received earlier, would have altered the ALJ's decision. Dr. Payne opined that plaintiff would be unable to participate in any activities except treatment or rehabilitation for three to six months. AT 21. Notably, she did not find that plaintiff appeared to be permanently disabled, or that his condition warranted an SSI referral. AT 21-22. To

34

support a finding of disability under the Act, a claimant must suffer from a disability expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  Because there is nothing in Dr. Payne's post-hearing assessment to suggest that plaintiff's conditions could be expected to continue for at least a twelve month period, there is no basis to conclude that the earlier receipt of this report would have changed the ALJ's determination.

Based upon the foregoing I find that the psychological and intellectual assessments of Dr. Payne prepared after the issuance of the ALJ's decision do not constitute new and material evidence warranting reversal of the ALJ's determination.

### 3.  Plaintiff's Physical RFC

In his third and final argument, plaintiff submits that the ALJ misstated his testimony regarding his lifting capacity, and later compounded the error by relying upon the misstatement in determining his RFC.  Plaintiff contends that while the ALJ included within his decision a statement that "[i]n his adult function report, the claimant states that he is able to lift 50 lbs," in the quoted statement plaintiff was merely indicating the heaviest weight that he was required to lift at a particular job, rather

than estimating his current capacity for lifting.

There is no question that in concluding that plaintiff retains the capacity to perform unskilled work activity at any exertional level the ALJ incorporated the fifty pound lifting component into his RFC finding. Plaintiff is mistaken, however, that this determination was based upon an inaccuracy. The portion of the ALJ's decision quoted refers to a statement contained in plaintiff's adult function report. *See* AT 30. In disputing the ALJ's characterization of the statement regarding his ability to lift, plaintiff cites a different document, a work history report, in which plaintiff indicated that fifty pounds was the heaviest weight he lifted with respect to an unspecified job title.[8] In the adult function report relied upon by the ALJ, plaintiff explained that his back prevents him from lifting anything over fifty pounds. *See* AT 110. Accordingly, the ALJ did not, as argued by the plaintiff, mischaracterize plaintiff's reports or testimony, and thus this argument provides no basis to disturb the ALJ's RFC finding or resulting conclusion that plaintiff was not disabled at the relevant times.

IV.   SUMMARY AND RECOMMENDATION

---

[8]      I note that in a disability report, plaintiff stated that sixty-five pounds was the heaviest weight he lifted for Haines Tires and that while there he frequently lifted fifty pounds or more during the work day. *See* AT 87.

In arriving at his determination that plaintiff was not disabled, within the meaning of the Act, at the relevant times, the ALJ appropriately construed Dr. Payne's opinions, was not under any obligation to further develop the record, and properly determined, based upon vocational expert testimony as confirmed by resort to the grid, that plaintiff was not disabled.  The materials submitted on behalf of the plaintiff to the Appeals Council following the ALJ's issuance of his determination did not constitute new evidence requiring reversal of the ALJ's decision. Accordingly, and based upon a finding that the ALJ applied the correct legal principles and his resulting determination is supported by substantial evidence, it is hereby respectfully

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner's determination of no disability be AFFIRMED, and plaintiff's complaint be DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of Court within ten (10) days. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. §

636(b)(1) (2006); FED.R.CIV.P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      October Í , 2009
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

38

Skip to: Page Content | Navigation



Search VESID

## Vocational and Educational Services for Individuals With Disabilities (VESID)

VESID | Calendar | Press Room | RSS | Contact Us

Expand All | Collapse All

VESID Home

- About Vesid

   A b o u t

   Deputy Commissioner

Special Education

+ Adult Vocational Rehabilitation Services

+ Adult Vocational Rehabilitation Service Delivery and Coordination

+ Current Provider Information

+ Employer Services

+ Independent Living Centers

Lifelong Services

+ Procurement and Grant Opportunities

Data Collection, Analysis and Reporting (SEDCAR)

+ Partners

## About Us

VESID offers access to a full range of services that may be needed by persons with disabilities through their lives. Through its administration of both the special education and vocational rehabilitation programs, VESID coordinates policy and services relating to:

- transition services for infants and toddlers with disabilities (ages birth to two years);
- special education services for students with disabilities (3-21);
- transition services for students with disabilities from school to adult services;
- vocational rehabilitation services for individuals with disabilities, ages 16 and older; and
- independent living services for adults with disabilities.

1:08-CV-0919 (NAM/DEP)

APPENDIX A

Last viewed by Magistrate Judge Peebles on Oct. 5, 2009

**University of the State of New York - New York State Education Department**

**NYS Education Department** | **Privacy Policy** | **Terms of Use** | **Feedback**

# I-3-3-4. ALJ's Action, Findings or Conclusions Not Supported by Substantial Evidence

Last Update: 9/08/05 (Transmittal I-3-36)

## A. General

Under the provisions of the regulations of 20 CFR 404.970 and 416.1470, if the decision of an ALJ is supported by "substantial evidence," the Appeals Council will deny the request for review or decline own motion review on this basis even though the Appeals Council might reach a different conclusion if it considered the case de novo under the "weight of the evidence" rule. The Appeals Council applies the same "substantial evidence" standard of review as the United States district courts.

## B. Weight of the Evidence

"Weight of the evidence" is defined as the balance or preponderance of evidence; the inclination of the greater amount of credible evidence to support one side of the issue rather than the other.

## C. Substantial Evidence

"Substantial evidence" is defined as that evidence which, although less than a preponderance, nevertheless is sufficient to convince a reasonable mind of the credibility of a position taken on an issue, when no evidence on the opposing side **clearly compels** another finding or conclusion. Therefore, the "substantial evidence" rule requires less in support of a finding or conclusion than the "weight of the evidence" rule. Evidence on one side of an issue need not possess greater weight or be more convincing and credible to be "substantial."

## D. Applying Substantial Evidence Rule

To determine whether an ALJ's decision is supported by substantial evidence, the analyst first must study each finding made to resolve an issue in the case and the evidence the ALJ cites to support the finding. The analyst must then study the record as a whole (i.e., the evidence cited by the ALJ in support of his or her findings and all other evidence of record) to determine whether the ALJ reached a conclusion consistent with those findings.

The Appeals Council will not substitute its judgment for that of the ALJ. The fact that the ALJ could have made different findings based on the evidence of record is irrelevant. When the ALJ clearly misinterpreted or incorrectly evaluated evidence upon which the decision was based, the decision is not supported by substantial evidence.

If the evidence cited by the ALJ is not substantial, but other substantial evidence in the record supports the ALJ's conclusion, the Appeals Council will grant review for corrective action. If the record is otherwise complete, the Appeals Council will issue a decision. However, where the record is incomplete or credibility and/or subjective complaints are at issue, the Appeals Council will remand the case to an ALJ for further proceedings. The Appeals Council generally will not review a favorable decision on its own motion if the record contains substantial evidence to support the ALJ's ultimate conclusion.